# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL LANG, | Case No.: 09CV1083 DMS (MDD) |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| MICHAEL J. ASTRUE, in his official capacity as the COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Pending before the Court is Defendant's motion for summary judgment. (Doc. 27.) For the following reasons, the motion is granted.

## I.

## BACKGROUND

Plaintiff has been employed by the Social Security Administration ("SSA") as a Teleservice Representative since 1989. (Pl. Ex. A at 2.) The Position Description for his position sets forth a Teleservice Representative's duties, which include a "full range of assistance" regarding "all programs" administered by SSA. (MSJ Ex. B at 43-48.) The job description states that the work is performed in an office setting. (*Id.* at 48.) Plaintiff's scheduled work hours are from 8:00 a.m. to 4:30 p.m., although the SSA's flex band permits him to report to work as late at 8:45 a.m. (MSJ Ex. C at 65-66.)

1 | Plaintiff began experiencing sensitivities to food and chemicals in 1995 and sought treatment
2 | from Dr. Ronald Lesko. (MSJ Ex. C at 83, Ex. A at 11; Pl. Ex. A at 2-3, Ex. B at 9.) Dr. Lesko
3 | diagnosed Plaintiff with having delayed, non-IgE mediated, multiple food sensitivities or food and
4 | chemical sensitivities. (MSJ Ex. A at 8, Ex. C at 83.) According to Dr. Lesko, Plaintiff's symptoms are
5 | chronic and unpredictable and include symptoms of headaches, congestion, and perspiration. (MSJ Ex.
6 | C at 81.) According to Plaintiff, his symptoms also include fatigue, shortness of breath, intestinal
7 | disorders, loss of balance, and limited ability to think clearly. (MSJ Ex. A at 9-10; Pl. Ex. A at 4.)
8 | Plaintiff's symptoms generally occur once or twice per week in the morning and last for approximately
9 | four to six hours. (MSJ Ex. A at 21-22, 27; Pl. Ex. E at 88.) Dr. Lesko conducted food tests to attempt
10 | to determine the sources of Plaintiff's sensitivities, but stated that it would be nearly impossible for
11 | Plaintiff to identify which foods cause his delayed symptoms. However, Plaintiff has noticed that he
12 | tends to get sick when he eats marinades, vinegar, soy sauce, or foods containing MSG or other
13 | chemicals and food additives. (MSJ Ex. C at 82, Ex. A at 16-20; Pl. Ex. E at 90, 92.) According to
14 | Plaintiff, when he eats purely organic foods, he does not have reactions to those foods and has fewer
15 | experiences of his symptoms. (MSJ Ex. A at 20-21.)

16 | SSA provides two types of leave–sick leave, which is available for unanticipated absences, but
17 | must be requested prior to 8:45 a.m., and annual leave, which allows an employee to take time off for
18 | personal and emergency purposes, but is subject to the employer's right to determine when such leave
19 | may be taken. (MSJ Ex.C at 66.) According to Plaintiff, he misses a half-day of work per week on
20 | average due to his unpredictable symptoms. (MSJ Ex. A at 24.) To account for past absences, Plaintiff
21 | has first used his allotted sick leave and has then requested annual leave. (*Id.* at 25.)

22 | According to Plaintiff, his supervisor, Annie Williams, first became aware of his alleged
23 | disability in 1999. (Pl. Ex. E at 102-03.) Plaintiff further claims his usage of sick leave became a
24 | problem with management on July 3, 2006, when he was asked to provide medical documentation for
25 | his alleged symptoms. (MSJ Ex. C at 51; Pl. Ex. B at 14.) However, he was issued a sick leave
26 | counseling memorandum on October 26, 2005, due to his repeated morning requests for leave, which
27 | warned him that his continued violation of SSA's attendance rules would result in disciplinary action.
28 | (MSJ Ex.C at 53, 65-67, 86-87.) After he received this counseling memorandum, Plaintiff was late to

1  work and failed to call in by 8:45 a.m. on six occasions. (*Id.* at 64-65, 89-92.) As a result, on March
2  14, 2006, Plaintiff received an Official Reprimand from Ms. Williams for frequently requesting leave
3  without prior notice and for consistent tardiness. (*Id.* at 53, 64-65, 89-92.) When Plaintiff continued
4  to have absences and to appear late for work, he was placed on leave restriction from August 10, 2006
5  to December 8, 2006. (*Id.* at 71.) After requesting leave to accommodate an incident of the stomach
6  flu in July 2006, Plaintiff filed a grievance and, within a few days of the grievance hearing in August
7  2006, SSA distributed a write-up to management personnel noting Plaintiff's sick leave restriction.
8  (MSJ Ex. A at 29; Pl. Ex. E at 109-10.) Plaintiff first sought Equal Employment Opportunity ("EEO")
9  counseling after he received the August 10, 2006 leave restriction. (MSJ Ex. C. at 50, Ex. A at 36; Pl.
10 Ex. E at 129.)

11     On March 23, 2007, Plaintiff was issued another leave counseling memorandum by his
12 supervisor at the time, Blanca Mendez, and was subsequently issued an Official Reprimand on May 4,
13 2007. The Official Reprimand charged Plaintiff with being absent without official leave ("AWOL") on
14 various occasions, including on October 19, 2006, when he requested, but was denied, sick leave on the
15 basis that he did not provide acceptable medical documentation as required by his sick leave restriction
16 in place at the time. (Pl. Ex. K at 165-66, Ex. M at 172-74.) Plaintiff was placed on a second sick leave
17 restriction from July 2, 2007 to October 30, 2007, requiring him to produce medical certification in
18 support of each of his absences from work during that time period. (Pl. Ex. N at 176-78.)

19     Plaintiff filed a request for reasonable accommodation of his alleged disability on October 12,
20 2006. (Pl. Ex. H at 157.) As an accommodation, Plaintiff requested a liberal leave policy because of
21 the unpredictable nature of his symptoms and because his symptoms routinely affected his ability to get
22 to work before 8:45 a.m. He also requested that he not be required to submit medical documentation
23 each time he used sick leave. (MSJ Ex. C at 51, 68, Ex. D at 98; Pl. Ex. E at 123, Ex. H at 157.) The
24 manager of the center where Plaintiff works, Lourdes Esquer, referred Plaintiff's request for
25 accommodation to a medical officer for review. (MSJ Ex. G at 153-55.) Christopher Holland, M.D.
26 was the consulting physician who reviewed Plaintiff's request for accommodation. (Pl. Ex. I at 160.)
27 Dr. Holland reviewed Plaintiff's request, as well as four letters from Dr. Lesko to Plaintiff's supervisor
28 regarding Plaintiff's condition, and concluded that Plaintiff's alleged condition was not a qualified

disabling condition under the Rehabilitation Act. (MSJ Ex. C at 68, Ex. D at 98.) Although Dr. Holland acknowledged that Plaintiff's symptoms may affect his daily life activities, he did not see evidence that they affected him severely. (MSJ Ex. D at 99; Pl. Ex. I at 160.) Dr. Holland further expressed his belief that the type of symptoms described by Plaintiff were not the type that would prevent reasonable people from generally attending work. (MSJ Ex. D at 101-02.) Based upon Dr. Holland's opinion, Ms. Esquer denied Plaintiff's accommodation request on November 1, 2006. (MSJ Ex. C at 68-69, Ex. G at 160-63; Pl. Ex. D at 68-69.) At the time of denial, Plaintiff was informed that the medical office would review any additional medical documentation Plaintiff wished to present. (MSJ Ex. C at 68.) Plaintiff, however, did not request a reassessment or an independent review of the denial of his request. (MSJ Ex. A at 33-34.)

On May 11, 2007, SSA sought applicants for a Claims Representative–Disability Insurance Benefits Project, effective May 18, 2007. (MSJ Ex. F at 117-21; Pl. Ex. E at 141.) To be considered, potential candidates had to be journeyman with 52 weeks in the GS-08 grade, reliable and dependable, and had to have good communication skills and the ability to work well independently. (MSJ Ex. F at 117-21.) Although Plaintiff applied for the project, the selecting official, Ms. Esquer, selected other San Diego Teleservice Center employees, whom she felt were more qualified, for the positions. (*Id.*) Plaintiff also applied for Claims Representative Project positions in April 2008 and again in early 2010, and was not selected on either occasion. (Pl. Ex. D at 34-5.)

On May 19, 2009, Plaintiff filed a Complaint with this Court alleging employment discrimination. (Doc. 1.) The Complaint sets forth three claims for relief: (1) discrimination based on reprisal, (2) discrimination based on disability, and (3) failure to accommodate disability. On February 11, 2011, Defendant filed the instant motion for summary judgment. (Doc. 27.)

## II.

## LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when, under the governing

substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). After the moving party has met this burden, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## III.

## DISCUSSION

Defendant moves for summary judgment on the basis that Plaintiff's claims fail as a matter of law because Plaintiff's alleged disability is not sufficiently severe and does not substantially limit his major life activities; he is not a qualified individual because he cannot perform the essential functions of his job; even if he could show he is a qualified individual, Plaintiff cannot show a reasonable accommodation existed; and Plaintiff cannot show he was treated differently due to his alleged disability or protected activities. Plaintiff argues undisputed material facts support a finding that he is a qualified individual with a disability; there is a genuine issue of material fact as to whether Plaintiff's disability limits his major life activities; sufficient facts exist to support a finding that a reasonable accommodation exists; and there is a genuine issue of material fact as to whether Plaintiff was treated differently due to his disability and participation in protected EEO activities.

**A.     Discrimination on the Basis of Disability**

The Rehabilitation Act prohibits discrimination on the basis of disability in programs in federal employment. 29 U.S.C. § 791. In determining whether there has been a violation of the Rehabilitation Act, the Court looks to the standards applied in Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12111, *et seq.* 29 U.S.C. § 794(d); 29 C.F.R. § 1614.203; *Coons v. Sec'y of the U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004).[1] The ADA prohibits discrimination against

---

[1]     The Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), which
(continued...)

qualified individuals with a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under the ADA, discrimination is defined, in part, as the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." *Id.* at § 12112(b)(5)(A). To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that he or she has a disability as set forth in the ADA, can perform the essential functions of his or her job and is therefore a qualified individual, and has suffered an adverse employment action because of his or her disability. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001); *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996).

A disability under the ADA is "a physical or mental impairment that substantially limits one or more major life activities" of an individual, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102. "Substantially limits" means, in part, "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 41 C.F.R. § 60-741.2(q)(1)(ii). Plaintiff asserts he is substantially limited in the major life activities of eating, caring for himself, thinking, and reading due to his alleged disability. Defendant argues there is no genuine issue of material fact as to whether Plaintiff has a disability within the meaning of the ADA. Defendant does not dispute that multiple chemical sensitivities is a physical impairment, but rather argues such impairment does not substantially limit a major life activity of Plaintiff. In arguing he has set forth sufficient facts demonstrating he is substantially limited in the major life activity of eating, Plaintiff relies heavily on *Fraser v. Goodale*, 342 F.3d 1032 (9th Cir. 2003). However, Plaintiff's situation is distinguishable from that of the brittle diabetic described in *Fraser*. Although Plaintiff states he avoids certain foods that he is aware cause him

---

[1]/(...continued) broadened the definition of disability under the Act, took effect in 2009. However, Congress did not indicate that it intended for the amendments to be applied retroactively, and the Ninth Circuit has refused to do so. *See Becerril v. Pima County Assessor's Office*, 587 F.3d 1162, 1164 (9th Cir. 2009). Accordingly, the Court analyzes Plaintiff's Rehabilitation Act claims in accordance with the ADA standards in effect prior to the passage of the ADAAA.

issues–such as marinades, MSG, soy sauce, and food additives–he also states that he has no way of knowing what foods trigger his reactions and that eating organic foods does not cause him to experience his symptoms. Given this, despite the fact that Plaintiff may experience symptoms in reaction to certain unknown foods he eats, the limitations on Plaintiff's eating do not appear to be greater than those faced by the average person or so severe to substantially limit the activity of eating. *See Collado v. United Parcel Serv.*, 419 F.3d 1143, 1155-56 (11th Cir. 2005). As to the activities of thinking, caring for himself, communicating, and reading, Plaintiff does not argue that his alleged disability substantially limits these activities on a constant basis, but rather that it substantially limits these activities when he is experiencing symptoms. Accordingly, Plaintiff must demonstrate that these symptoms occur frequently enough to be considered as substantially limiting his ability to engage in these activities as compared to the average person. *See Fraser*, 342 F.3d at 1044. According to Plaintiff, he experiences symptoms once to twice per week and they are debilitating for approximately four to six hours on average. However, even assuming that there is a genuine dispute as to whether Plaintiff is substantially limited in one or more major life activities and is therefore disabled within the meaning of the ADA and the Rehabilitation Act, Plaintiff has failed to demonstrate he is a qualified individual within the meaning of these Acts and Defendant's motion for summary judgment as to this claim is therefore granted.

The ADA defines a "qualified individual with a disability" as an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To determine whether an individual is a qualified individual, a court first looks to whether the individual meets the requirements for the position–such as skill level, education, and experience–and then determines whether the individual can fulfill the essential functions of the job. 29 C.F.R. § 1630.2(m). In determining the essential functions of a job, a court considers "the employer's judgment as to what functions of a job are essential," 42 U.S.C. § 12111(8), and looks to "[t]he amount of time spent on the job performing the function," "[t]he consequences of not requiring the [employee] to perform the function," and the work experience of current and former employees. 29 C.F.R. § 1630.2(n)(3)(iii)-(vii).

Defendant argues regular and predictable attendance is an essential function of Plaintiff's position and is necessary for the successful performance of his job duties. Plaintiff argues he performs

1  the essential functions of his job when he is present and that, if he were provided with the
2  accommodation of a liberal leave policy, he would be able to perform all of the essential functions of
3  his position. It is clear, as Plaintiff concedes, that "some degree of regular, predictable attendance is
4  fundamental to most jobs." *Walders v. Garrett*, 765 F. Supp. 303, 309-10 (E.D. Va. 1991); *see also*
5  *Jackson v. Veterans Admin.*, 22 F. 3d 277, 279 (11th Cir. 1994); *Carr v. Reno*, 23 F.3d 525, 530 (D.C.
6  Cir. 1994); *Wimbley v. Bolger*, 642 F. Supp. 481, 485 (W.D. Tenn. 1986). Plaintiff's job is not excepted
7  from this general principle–his written job description indicates he is responsible for providing "a full
8  range of assistance to beneficiaries and inquirers by telephone and/or by correspondence" and that the
9  work is to be performed in an office setting. His supervisors further spoke to him on several occasions
10 regarding the importance of his regular and predictable timely attendance at work. (MSJ Ex. C at 53, 64-
11 67.) As regular and predictable attendance and performance of the job in an office setting are essential
12 functions of Plaintiff's position, there is no genuine dispute as to whether Plaintiff can perform these
13 essential functions, as Plaintiff's suggested accommodation itself would permit Plaintiff to work only
14 when he determined he was able. Furthermore, there is evidence in the record demonstrating several
15 of Plaintiff's incidents of brief tardiness were not in fact due to his alleged disability or experiencing of
16 symptoms. (MSJ Ex. A at 5-6, Ex. C at 64, Ex. E at 116.)

17       Plaintiff argues attendance is not a necessary function of his position because he is one of many
18 individuals employed in the position and it is possible for other employees to fill in for him during any
19 periods of absence. However, there is evidence in the record that Plaintiff was informed on multiple
20 occasions that his repeated unscheduled and unpredictable absences prevented him from completing the
21 essential functions of his job and prevented the SSA from adequately serving the public. (MSJ Ex. C
22 at 66 ("You are needed at work to perform your duties. This office cannot carryout the work of the
23 Agency when employees are not at work when they are expected and are AWOL. Your misconduct
24 negatively impacts the Agency's service to the public and the efficiency of the service."), at 72 ("I
25 recognize that placing you under leave restriction is a serious step, but I feel that it is a necessary one
26 due to the adverse impact on the office created by your excessive unscheduled absences. Your chronic
27 absences/tardiness impairs our ability to serve the public.").) Accordingly, Plaintiff has failed to
28 demonstrate the existence of a genuine dispute as to whether he is a qualified individual within the

meaning of the ADA and Rehabilitation Act and Defendant's motion for summary judgment on this claim is therefore granted.

**B.     Failure to Accommodate**

In order to establish a *prima facie* case for failure to accommodate a disability, a plaintiff must show that he or she is disabled, is a qualified individual, and that a reasonable accommodation is possible. *See Buckingham v. United States*, 998 F.2d 735, 739-40 (9th Cir. 1993). For the reasons discussed above, there is not a genuine dispute as to whether Plaintiff is a qualified individual within the meaning of the ADA and Defendant's motion for summary judgment on Plaintiff's failure to accommodate claim is therefore granted. Furthermore, Plaintiff has failed to demonstrate a genuine dispute as to whether a reasonable accommodation is available. Under the ADA, a reasonable accommodation of an employee's qualified disability may include job restructuring or a modified work schedule. 42 U.S.C. § 12111(9)(B). However, this does not mean that an open-ended work schedule that permits an employee to work whenever he or she is able is necessarily a reasonable accommodation. *See Hypes v. First Commerce Corp.*, 134 F.3d 721, 727 (5th Cir. 1998); *see also Webb v. Wynne*, No. 07cv471 (ID), 2008 WL 4831740, at *6 (M.D. Ala. Nov. 3, 2008), *aff'd* 347 Fed. Appx. 443 (11th Cir. 2009)("[A]n accommodation is only 'reasonable,' and therefore required by the ADA, if it enables the employee to perform the essential functions of the job."). Where regular and predictable attendance is an essential function of the job, as is the case here, an accommodation requesting that an individual be permitted to work whenever able is not reasonable under the circumstances.[2]

**C.     Discrimination on the Basis of Reprisal**

To state a *prima facie* claim for reprisal, a plaintiff must demonstrate the he or she engaged in protected activity, thereafter suffered an adverse employment action, and that there is a causal relationship between the two. *Wrighten v. Metro. Hosps., Inc.*, 726 F.2d 1346, 1354 (9th Cir. 1984); *Coons*, 383 F.3d at 887. Plaintiff bears the burden of presenting "evidence adequate to create an inference that an employment decision was *based on* an illegal discriminatory criterion." *Coons*, 383

---

[2]    Defendant argues in his motion that, by failing to respond to Defendant's requests for admissions, Plaintiff has admitted Defendant's Rehabilitation Act defenses. However, in light of the Court's Order granting Plaintiff's motion to withdraw the deemed admissions, this argument is moot and is not addressed by the Court. (Doc. 39.)

F.3d at 887 (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996)). A causal link may be shown by the decision-maker's knowledge of protected activity and temporal proximity between the protected activity and the adverse action, or by direct evidence of retaliatory motive. *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731 (9th Cir. 1986). If the plaintiff establishes a *prima facie* claim, the employer then has the burden of providing a legitimate reason for the adverse employment action. If the employer is able to do so, the plaintiff must then demonstrate that a genuine issue of material fact exists as to whether the reasons advanced by the employer are a pretext in order to survive a motion for summary judgment. *Id.*

Plaintiff's activity with the EEO was protected activity. He also suffered adverse employment actions when he was placed on leave restrictions and when he was not selected to participate in various SSA programs. To establish a link between his protected activities and the adverse employment actions, Plaintiff points to the closeness in time between the activities and the adverse actions. However, Defendant had counseled and reprimanded Plaintiff for his repeated absences and tardiness prior to Plaintiff's EEO activity in 2006 and the first leave restriction was in response to Plaintiff's continued leave issues following this counseling and reprimand.

Even assuming Plaintiff has established a *prima facie* claim of discrimination on the basis of reprisal, Defendant has provided legitimate reasons for the adverse employment actions. As for placing Plaintiff on leave restrictions, Defendant provided evidence that multiple attempts were made to address Plaintiff's attendance issues prior to placing him on leave restriction and the restrictions were intended to promote Plaintiff's regular and predictable attendance. Moreover, Plaintiff's attendance did in fact improve while he was on leave restriction. (MSJ Ex. C at 53, Ex. F at 113.) As to Plaintiff's failure to be selected to participate in various programs in 2007 and 2008, Defendant has provided sufficient evidence that, based upon the requisite qualifications for participation in the various programs–dependability, reliability, good communication skills, and the ability to work well independently–other applicants were considered more qualified than Plaintiff and were therefore selected. (Pl. Ex. D at 44-51, Ex. F at 121, Ex. G at 138-41, 143; Pl. Ex. C at 29.)

Plaintiff has not demonstrated a genuine issue of fact as to whether these proffered legitimate reasons are merely a pretext. Plaintiff argues Defendant's reasons are clearly a pretext because his

1  excessive absences and lack of dependability were due to his alleged disability. However, several of the
2  instances for which Plaintiff was considered AWOL were brief periods of tardiness in the morning,
3  which according to Plaintiff's testimony regarding the timing of his symptoms and the period of
4  debilitation, would appear to not necessarily relate to his alleged disability. (MSJ Ex. C at 61, 64, Ex.
5  F at 116; Pl. Ex. M at 172-74.) Plaintiff further admitted he was tardy on occasions for reasons other
6  than his alleged disability and was even docked pay for these instances of tardiness. (MSJ Ex. A at 5-6.)
7  According to Plaintiff, he believes he was not selected for the May 2007 project because of his past EEO
8  activity because his "work has been satisfactory and has always been satisfactory, because [he] is more
9  senior to all of the people that have been selected with the exception of [one], and because . . . Ms.
10 Esquer, she does things based on people's seniority." (Pl. Ex. E at 141.) However, seniority was not
11 a factor to be considered in the selection process for the position at issue and, as Plaintiff admits, Ms.
12 Esquer did not indicate that it was. (MSJ Ex. G at 139; Pl. Ex. D at 45, Ex. E at 142.) Plaintiff's
13 supervisors pointed to his poor performance in conducting a training, his inability to work independently,
14 his mumbling on occasion, and that he sometimes did not permit clients to finish explaining their
15 problems before interrupting them as reasons why he was not selected for either the 2007 or 2008
16 programs. (MSJ Ex. G at 138-41; Pl. Ex. Q at 197.) Plaintiff's expressed opinion that he believes
17 Defendant's reasons "didn't sound like honest answers" and Defendant "was just making up answers
18 to fool the investigator" is not sufficient to establish a genuine dispute as to a material fact regarding
19 whether Defendant's stated reasons are merely a pretext for retaliation. (Pl. Ex. E at 135.) Accordingly,
20 Defendant's motion for summary judgment as to Plaintiff's reprisal claim is granted.

## IV.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted.

**IT IS SO ORDERED**.

DATED: June 1, 2011

HON. DANA M. SABRAW
United States District Judge